# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
October 27, 2015

*In re* MORRIS, Minors.

No. 326713
Kent Circuit Court
Family Division
LC Nos. 13-052575-NA;
13-052576-NA

Before: TALBOT, C.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

In lower court file nos. 13-052575-NA and 13-052576-NA, respondent-father appeals as of right the March 2, 2015 order terminating his parental rights to the two minor children under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist) and (g) (failure to provide proper care and custody). We affirm.

Father and mother were never married to each other, but father signed an affidavit on October 18, 2013, averring that he was the father of the minor children. Both children were born in October 2012. Father was incarcerated on March 29, 2013, for the felony offense of assault with intent to rob while unarmed and remained incarcerated throughout the proceedings in this case. The children were removed on August 19, 2013. The trial court terminated the parental rights of mother and father over both children on March 2, 2015. Mother is not a party to this appeal.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). If this Court concludes that the trial court did not clearly err in finding one statutory ground for termination, we do not need to address the additional grounds. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

With regard to MCL 712A.19b(3)(g), the trial court found that father could not provide the children with proper care and custody and that father's relatives were not interested in caring for them. Father admitted at adjudication that his criminal history and incarceration prevented him from providing the children with proper custody, care, and a suitable home environment. Father had a criminal history, was incarcerated throughout this case, and did not provide suitable relatives with whom the children could live during his incarceration. Furthermore, there was no indication that father would be able to provide the children with proper care and custody within a

-1-

reasonable time. Father's release from prison was in April 2015 at the earliest and he had no concrete plans as to how he would obtain housing or employment after his release. Rather, he merely had vague plans of staying with relatives and seeking help from them. However, these relatives had already declined to care for the children. Moreover, the children had significant developmental delays and life-threatening allergies related to their diets. Consequently, they required more care than normal. For example, there were certain foods that they needed to avoid, they had frequent medical appointments and in-home therapy, and one of the children needed epinephrine available at all times. While father completed "homework" assignments given to him by the foster care worker regarding the children and his parenting abilities, the foster care worker expressed some concern at father's answers, worrying that he did not understand the severity of the children's needs. In other words, father failed to display an understanding of the severity and depth of their problems or what would be required of him with regard to caring for the children. See *In re LaFrance Minors*, 306 Mich App 713, 728-729; 858 NW2d 143 (2014).

Additionally, evidence shows that father abused substances and engaged in domestic violence against mother. The Department of Health and Human Services ("DHHS") reported that father admitted to substance abuse and that he "hurt others." Mother reported that there was domestic violence between her and father. Father was unable to complete services to rectify those barriers while he was incarcerated. In fact, father even expressed a desire to live with mother after he was paroled. These issues affected father's ability to provide proper care and custody for his children.

The trial court did not clearly err in concluding that father would be unable to rectify these conditions within a reasonable time considering the age of the children. Testimony at the termination hearing indicated that it would take father approximately six months after his release from prison to work on issues regarding caring for them, and that this was an unreasonable amount of time. Father was, at best, approximately two months away from being released from incarceration at the date of the termination hearing, meaning that the children, who had been in care for approximately 18 months at this point, would need to remain in care for *at least* another 8 months, and potentially even longer, per the foster care worker. And, father lacked specific plans about housing and employment after his release. In light of this evidence, and in light of father's behavioral problems while incarcerated—including theft and destruction of state property—it was very unlikely that he would rectify his issues and be able to care for the children within a reasonable time.

Therefore, we conclude that the trial court did not clearly err in finding that father, "without regard to intent, fail[ed] to provide proper care or custody for the child[ren] and there is no reasonable expectation that [father] will be able to provide proper care and custody within a reasonable time considering the child[ren]'s age." MCL 712A.19b(3)(g). See also *In re LaFrance Minors*, 306 Mich App at 728-729; *In re VanDalen*, 293 Mich App at 139.[1]

---

[1] Father argues that he was "not treated fairly" because he was incarcerated. We note that in *In re Mason*, 486 Mich 142, 152-153, 160; 782 NW2d 747 (2010), our Supreme Court held that an

Furthermore, the trial court did not clearly err in finding that termination of father's rights was in the children's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012) (citations omitted). When considering best interests, the focus is on the child rather than the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). The trial court should consider all available evidence to determine the child's best interests, *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000), and may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home," *In re Olive/Metts Minors*, 297 Mich App at 41-42 (citations omitted).

The trial court did not clearly err in finding that termination of father's rights was in the children's best interests. Father had been in prison since the children were five months old and they had little to no bond with him. Further, the children needed permanency and stability. Agents for the DHHS testified that waiting for father's release from prison—in addition to waiting for him to rectify his issues regarding his ability to care for them after his release— would force the children to remain in foster care for too long. The children were making progress in foster care and their foster parents were interested in adopting them. This factor is especially important in light of the children's special needs and life-threatening allergies. Therefore, the trial court did not clearly err in finding that termination was in their best interests. *In re Olive/Metts Minors*, 297 Mich App at 41-42; *In re Moss*, 301 Mich App at 90.

Affirmed.


/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Michael F. Gadola

---

incarcerated respondent must be given an opportunity to participate in the proceedings and that a respondent's present inability to care for his or her children as a result of incarceration was not grounds for termination. We find the instant case to be distinguishable from *In re Mason* in two key respects. First, unlike the respondent in *In re Mason*, father was given an opportunity to participate in the proceedings. He was also afforded *some* services during his incarceration, and any inability to obtain additional services was the result of his own decision-making, i.e., his actions that led to incarceration, and not due to a lack of effort by DHHS and foster care workers. Second, the trial court's termination decision in this case was not based solely on father's incarceration; rather, it was based on his failure to provide any means of caring for his children while he was incarcerated, as well as on his shortcomings that were not rectified during this case. Cf. *id.* at 161 (explaining that an incarcerated parent can provide proper care and custody for his or her children through an appropriate relative).